IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | Case No. 2:14-CV-802 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| **VARNIE JUSU DUNOR,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on Plaintiff United States of America's Motion for Summary Judgment (Doc. 25). The Government asks the Court to revoke Defendant Varnie Jusu Dunor's naturalization and cancel his Certificate of Naturalization. The defendant, proceeding *pro se*, has not filed a response to the Government's motion. For the reasons that follow, the Court **GRANTS** the Government's Motion for Summary Judgment.

**I.  BACKGROUND**

Valerie Jusu Dunor, a native of Liberia, entered the United States as a lawful permanent resident on September 26, 1998.  (N-400 Application for Naturalization, Doc. 25-1 at 2.)  On March 13, 2009, Dunor filed an Application for Naturalization with United States Citizenship and Immigration Services ("USCIS"), seeking United States citizenship under 8 U.S.C. § 1427 based upon his status as a lawful permanent resident for at least five years.  (*Id.* at 1.)  In Part 10, Section D of the application, Dunor checked boxes indicating that he had: (1) never committed a crime for which he was not arrested; (2) had never been arrested, cited, or detained by any law enforcement officer; (3) never been charged with a crime or offense; (4) never been convicted of a crime or offense; (5) never received a suspended sentence, been placed on probation, or been

1

paroled; and (6) never given false or misleading information to any United States Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal. (*Id.* at 8.)

The government has presented evidence that on September 8, 2007, the West Chester Police Department in Butler County, Ohio, arrested Dunor and charged him with felony burglary. (Doc. 25-7.) He subsequently pleaded guilty to a reduced charge of complicity to criminal trespass and was sentenced to 30 days in jail, with 22 days of that sentenced suspended. (Doc. 25-8.)

On September 22, 2009, Dunor completed an interview with USCIS Immigration Services Officer Allan Shaub and signed the application under penalty of perjury. (Doc. 25-1 at 10.) Officer Shaub has submitted an affidavit to the Court attesting that while he does not remember Mr. Dunor's interview, his standard procedure during such interviews was to place the applicant under oath and to ask the applicant questions 15 and 16, whether the applicant had ever committed a crime for which he was not arrested and whether the applicant had ever been arrested, cited, or detained by any law enforcement officer for any reasons. (Doc. 25-2 at 1-2.) Officer Shaub also stated that it was his standard practice at the end of the interview to have the applicant signed the affidavit section on the last page of the Form N-400 to certify that the information contained in the application was true and correct. (*Id.* at 2.)

On November 3, 2009, USCIS approved Dunor's naturalization application and he took an oath of allegiance at a naturalization ceremony on December 8, 2009. (Docs. 25-4, 25-5.) He was admitted as a citizen of the United States on that same day. (*See* Certificate of Naturalization, Doc. 25-6.)

On August 11, 2011, Dunor was indicted on 30 counts including (1) conspiracy to possess and utter counterfeit securities in violation of 8 U.S.C. § 513(a) and to commit bank fraud in violation of 18 U.S.C. § 1344 from on or about July 1, 2006 until August 11, 2011 and (2) money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) on October 4, 2006. (Indictment, Doc. 11, *United States v. Massaquoi et al.*, 2:11-cr-201 (S.D. Ohio Aug. 11, 2011).) On May 30, 2013, Dunor pleaded guilty to those two counts and the Government dropped the other charges. (Judgment, Doc. 661, *United States v. Dunor*, 2:11-cr-201 (S.D. Ohio June 13, 2013).)

On July 9, 2014, the Government filed a complaint to revoke naturalization against Dunor. (Doc. 1.) Dunor retained counsel, but the Court granted counsel's motion to withdraw from representation after Defendant missed multiple scheduled meetings that hindered counsel's ability to prepare an answer to the complaint and failed to make payments to counsel under the terms of a signed fee agreement. (*See* Docs. 13, 20.) Proceeding *pro se*, Dunor failed to file an answer to the complaint. The Government filed a motion for summary judgment and Dunor did not respond. (Doc. 25.) The Government argues that it is entitled to summary judgment on four independent bases: (1) during the statutory period before his naturalization in which he was required to be a person of good moral character, Dunor committed money laundering and conspiracy to possess and utter counterfeit securities and to commit bank fraud, which are crimes of moral turpitude ("CIMT"); (2) before he naturalized, Dunor committed complicity to criminal trespass, a crime adversely reflecting on his moral character; (3) Dunor provided false testimony to obtain an immigration benefit when he stated at his naturalization interview that he had never committed a crime for which he had not been arrested, or been arrested, cited, or detained by any

3

law enforcement officer; and (4) during his naturalization proceedings, Dunor willfully misrepresented and concealed material facts.

## II. STANDARD OF REVIEW

The right to acquire American citizenship "is a precious one" and "once citizenship has been acquired, its loss can have severe and unsettling consequences." *Fedorenko v. United States*, 449 U.S. 490, 505 (1981). Because of the importance of the right at stake, the government "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." *Costello v. United States*, 365 U.S. 265, 269 (1961). Therefore, "[t]he evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in doubt." *Fedorenko*, 449 U.S. at 505 (internal quotation marks omitted). "[O]nce a district court determines that the Government has met its burden of proving that a naturalized citizen obtained his citizenship illegally or by willful misrepresentation, it has no discretion to excuse the conduct." *Id.* at 517.

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,'" that is, if the evidence is such that a fact-finder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position, however, will be insufficient to survive the motion. *See Anderson,* 477 U.S. at 252; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995).

### III.  ANALYSIS

The Immigration and Nationality Act ("INA") provides that no person shall be naturalized unless such person "has been and still is a person of good moral character" during the period of five years preceding the filing of the application through the time citizenship is granted. 8 U.S.C. § 1427(a)(3), (e); 8 C.F.R. § 316.10(a)(1). For Dunor, the relevant statutory period was March 25, 2004 until December 8, 2009.

Under 8 U.S.C. § 1101(f)(3), one who is convicted of a crime involving moral turpitude during the statutory period is precluded from being regarded as a person of good moral character, and thus is not eligible for naturalization. A "'crime involving moral turpitude' is not defined in the INA or by agency regulations." *Yeremin v. Holder*, 738 F.3d 708, 714 (6th Cir. 2013). Crimes involving "deception or fraud consistently are held to qualify as crimes involving moral turpitude." *Id.* Indeed, "[f]raud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." *Jordan v. DeGeorge*, 341 U.S. 223, 229 (1951). Even absent a requirement of a specific intent to defraud, "if fraud or deception is inherent in the nature of the offense, then the crime involves moral turpitude." *Yeremin*, 738 F.3d at 714.

In determining whether a conviction under a federal statute constitutes a crime involving moral turpitude, the Sixth Circuit first applies the categorical approach. The Court must consider

5

"whether the full range of conduct encompassed by the statute constitutes a crime of moral turpitude." *Serrato-Soto v. Holder*, 570 F.3d 686, 689 (6th Cir. 2009) (internal citation omitted). In other words, the Court "look[s] to the elements of the offense, rather than the underlying facts of the specific case." *Yeremin*, 738 F.3d at 715.

Dunor was convicted of conspiracy to possess and utter counterfeit securities and commit bank fraud under 18 U.S.C. § 371, and money laundering under 18 U.S.C. § 1956. (Judgment, Doc. 661, *United States v. Dunor*, 2:11-cr-201, at 1 (S.D. Ohio June 13, 2013).)The maximum possible sentences for the charges to which Dunor pleaded guilty were five years imprisonment under 18 U.S.C. § 371 and 20 years imprisonment for 18 U.S.C. § 1956. (Elements of the Offense, Doc. 482, *United States v. Massaquoi et al.*, 2:11-cr-201, (S.D. Ohio Nov. 7, 2012).) These convictions constitute crimes involving moral turpitude because they involve fraud or deception. First, the bank fraud statute under which Dunor was convicted for conspiracy provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . .

18 U.S.C. § 1344. Second, the counterfeit-securities statute states as follows:

> Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government…

18 U.S.C. § 513(a). Finally, Dunor was convicted of money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), which provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity – (A)(i) with the intent to promote the carrying on of specified unlawful activity . . .

6

All of these crimes include an element of fraud or deception and thus constitute crimes involving moral turpitude. *See Yeremin*, 738 F.3d at 717 (a crime that "inherently involves deceptive conduct" constitutes a crime involving moral turpitude).

Dunor committed these crimes within the statutory period in which he was required to be a person of good moral character: March 25, 2005 through December 9, 2009. Dunor's conspiracy crimes took place from July 1, 2006 to August 11, 2011, and he committed overt acts in support of the conspiracy on July 17, 2006 and August 31, 2007. (Plea Agreement, Doc. 470, *United States v. Dunor*, 2:11-cr-201, at 1 (S.D. Ohio Nov. 5, 2012); Indictment, Doc. 11, *United States v. Massaquoi et al.*, 2:11-cr-201, at 3-9 (S.D. Ohio Aug. 11, 2011).) He also committed money laundering on or about October 17, 2006. (*Id.* at 22-23.)

Neither the Supreme Court nor the Sixth Circuit appears to have weighed in on the issue of whether the conviction, not merely the offense conduct, must have occurred within the statutory period. The plain language of the statute supports the government's position that the conviction need not occur during the statutory period so long as the commission of the crime occurred therein. *See* 8 U.S.C. § 1101(f) ("No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . a member of one or more class of persons . . ., if the *offense* described therein, for which such person was convicted or of which he admits the commission, was *committed during such period*" (emphases added)). Some courts have agreed. *See, e.g.*, *United States v. Lekarczyk*, 354 F. Supp. 2d 883, 887 (W.D. Wisc. 2005) ("It is inconsequential that defendant was not arrested or convicted of bank fraud, bail jumping and forgery-uttering until *after* he became a citizen."). One other court to discuss this issue, however, has treated it as unsettled, suggesting the statute might be ambiguous. *See United*

7

*States v. Guerrero*, No. CV-10-525-ST, 2010 WL 6420574, at *4 (D. Or. Dec. 21, 2010), *adopted by* 2011 WL 1225563 (D. Or. Mar. 31, 2011).

In any event, even if Dunor's later conviction did not constitute a crime involving moral turpitude during the relevant statutory period, the government has still shown by clear and convincing evidence that he is unable to meet the good moral character requirement under the "catch-all" provision of the statute that provides that "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such a person is or was not of good moral character."  8 U.S.C. § 1101(f).  The Attorney General has promulgated regulations that provide that "[u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]omitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts."  8 C.F.R. § 316.10(b)(3).  This regulation applies even when the acts do not constitute crimes involving moral turpitude or other enumerated crimes.  8 C.F.R. § 316.10(b)(3)(iii).  *See also United States v. Jammal*, 90 F. Supp. 3d 618 (S.D. W.V. 2015).  Here, there is no dispute that Dunor committed the fraudulent acts during the statutory period.

Nor can Dunor show any extenuating circumstances that would excuse his unlawful conduct.  *See id.* at 625-26 (rejecting the defendant's arguments that the facts that the relevant conduct occurred three years before the indictment and that he cooperated with the authorities could be considered extenuating circumstances).

The Court finds that the government has shown by clear and convincing evidence that due to Dunor's convictions for money laundering and conspiracy to commit bank fraud and to possess and utter counterfeit securities, he is unable to meet the statutory good moral character

requirement.  Therefore, he was ineligible to naturalize and he procured his naturalization illegally.  The Court need not reach the issues of whether: (1) Dunor's complicity to criminal trespass was a crime adversely reflecting on his moral character; (2) Dunor provided false testimony to obtain an immigration benefit; and (3) Dunor willfully misrepresented and concealed material facts during his naturalization proceedings.

### IV.  CONCLUSION

For the reasons stated above, the Government's motion for summary judgment is **GRANTED**.  Dunor's certificate of naturalization is **CANCELED**.  This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

    s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 14, 2016**